IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TAYLOR JONES, on behalf of herself and all similarly situated employees,<br><br>Plaintiff,<br><br>v.<br><br>BUTTERMILK RANCH, LLC,<br><br>Defendant. | No. _____<br><br>**COLLECTIVE ACTION**<br><br>**JURY DEMAND** |

## COLLECTIVE ACTION COMPLAINT

For her Collective Action Complaint ("Complaint") under the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–19, against Defendant Buttermilk Ranch, LLC ("Buttermilk Ranch" or "Defendant"), Plaintiff Taylor Jones ("Jones"), on behalf of herself and all other similarly situated employees, states as follows:

### INTRODUCTION

1. Jones files this collective action, on behalf of herself and all similarly situated employees, to remedy violations of the FLSA by Buttermilk Ranch.

2. This collective action seeks to recover unpaid minimum wages for Jones, as well as for all similarly situated current and former employees who worked for Buttermilk Ranch within 3 years prior to the filing of this Complaint, plus unlawfully retained tips, liquidated damages, attorneys' fees, and costs.

3. Buttermilk Ranch generally paid Jones and those she seeks to represent a direct, cash hourly wage lower than $7.25 per hour under the tip-credit provisions of the FLSA (a "tip-credit wage"). Plaintiff accordingly refers to herself and those similarly situated as "Tipped Employees."

4. Defendant failed to satisfy the requirements for utilizing the tip credit to meet its minimum-wage to its Tipped Employees by: (1) retaining a portion of tips earned by tipped employees each shift; (2) shifting business expenses to tipped employees by requiring them to purchase uniforms and equipment; (3) requiring tipped employees to share tips with non-tipped employees who have no customer interaction; and (4) requiring tipped employees to spend more than 20% of their shifts performing non-tip-producing work while paid a tip-credit wage.

## JURISDICTION AND VENUE

5. This Court has subject-matter jurisdiction. Jones's claims arise under the laws of the United States, namely the FLSA, 28 U.S.C. § 1331.

6. This Court has personal jurisdiction over Buttermilk Ranch; the company does business in Nashville, Tennessee.

7. Venue is proper in this Court. A substantial part of the events giving rise to this action occurred within this District, and Defendant does business in this District, *id.* § 1391(b).

## PARTIES

8. Jones is an individual; she resides in Hickman County, Tennessee.

9. Defendant owns and operates a restaurant in Nashville, namely The Butter Milk Ranch located at 2407 12th Ave. S, Nashville, TN 37204.

10. Buttermilk Ranch is a for-profit company, organized under the laws of Tennessee and registered to do business in Tennessee.

11. Buttermilk Ranch's registered agent for service of process is William W. Inman, 3807 Charlotte Ave., Nashville, TN 37209.

12. At all relevant times, Defendant has been regularly engaged in interstate commerce and/or the production of goods for interstate commerce.

13. At all relevant times, Defendant employed Plaintiff and other Tipped Employees under the FLSA.

14. At all relevant times, Plaintiff and other Tipped Employees were Defendant's employees under the FLSA.

15. Defendant's annual gross volume of business exceeds $500,000.

## COLLECTIVE ACTION ALLEGATIONS

16. Jones brings this collective action under 29 U.S.C. § 216(b) on behalf of herself and all similarly situated current and former employees of Defendants.

17. There are dozens of current and former employees who are similarly situated to Jones and to whom Defendants denied minimum wages.

18. Defendant unlawfully required Jones, as well as other similarly situated employees, to pay out of pocket for tools of the trade and to contribute their tips to invalid tip-sharing arrangements.

19. Jones seeks to proceed collectively under § 216(b) on behalf of herself and the following collective of persons: **All current and former Tipped Employees who worked for Buttermilk Ranch between February 12, 2021, and the present** ("Potentially Similarly Situated Employees").

20. Defendant is aware or should have been aware that federal law requires it to pay Jones and the Potentially Similarly Situated Employees at least the applicable minimum wage for all hours worked.

21. Defendant is aware or should have been aware that federal law prohibits it from requiring Jones and the Potentially Similarly Situated Employees to purchase tools of the trade without reimbursement if such purchases reduce their wages below the statutory minimum.

22. Defendant is aware or should have been aware that federal law prohibits it from requiring Jones and the Potentially Similarly Situated Employees to contribute their tips to invalid tip-sharing arrangements.

23. Defendant applied the same unlawful policies and practices to all its employees.

24. The Potentially Similarly Situated Employees are readily identifiable and locatable within Defendant's business records.

25. The Potentially Similarly Situated Employees should be notified of and allowed to join this collective action under § 216(b).

26. Unless the Court promptly issues notice to the Potentially Similarly Situated Employees, its members will not be able to secure the wages to which they are entitled.

## FACTS

27. Plaintiff Jones worked as a server and barista for Buttermilk Ranch from approximately January 2023 until approximately August 2023.

28. Defendant paid Plaintiff Jones a direct, cash wage of less than $7.25 per hour for all hours worked as a server.

29. Defendants claimed a tip credit of $5.12 per hour for all the hours Jones worked as a server.

30. The tip-credit and minimum-wage provisions of the FLSA apply to Defendant. 29 U.S.C. §§ 203(m), 206.

31. Defendant employs multiple classes of Tipped Employees, including servers and bartenders.

32. Job duties for Defendant's bartenders include but are not limited to greeting and serving customers at the bar and making drinks for servers to distribute to other customers.

33. Job duties for Defendant's servers include but are not limited to greeting and serving customers at tables, taking food and drink orders, entering orders into the computer system, and delivering those orders to customers.

34. Defendant applies the same employment policies, practices, and procedures to all their employees, including policies, practices, and procedures regarding tipping and minimum wages.

35. Defendant has a policy of generally paying all its Tipped Employees, like Jones, a direct, cash wage of less than the federal minimum wage of $7.25 per hour.

36. Defendant has a policy of generally taking a tip credit to satisfy its minimum-wage obligations to all their tipped employees, like Jones.

37. Because Defendant takes a tip credit under the FLSA for all its Tipped Employees, Defendant must meet all statutory requirements for counting a portion of tips received by its employees as satisfying the statutory minimum wage.

38. Defendant does not meet these statutory requirements for claiming a tip credit towards the minimum wage.

39. Defendant retains tips belonging to tipped employees by requiring Tipped Employees to share tips from private parties with Buttermilk Ranch managers.

40. Retaining any amount of tips belonging to tipped employees disqualifies Defendants from claiming a tip credit.

41. Defendants shift their business expenses to their tipped employees by requiring them to pay for uniforms and equipment.

42. For example, when Jones began working as a server for Buttermilk Ranch and during her employment, Defendant's managers required her to purchase, among other things, a

server book and pens.

43. Jones purchased a server book at the beginning of her employment.

44. Jones purchased pens multiple times during her employment.

45. By requiring Tipped Employees to purchase uniforms and equipment for their jobs, Defendant causes them to receive less than the statutory minimum wage.

46. Shifting business expenses to its Tipped Employees disqualifies Defendant from claiming a tip credit.

47. Defendant has a policy of requiring Tipped Employees to share tips with non-tipped employees who have no customer interaction, including, for example, silverware rollers.

48. Defendant's silverware rollers have no customer interaction. They work in the back-of-house area outside the view of customers, and their only duty is to roll silverware.

49. The FLSA does not permit tip-sharing arrangements in which Tipped Employees share their tips with non-tipped employees who have no customer interaction.

50. Where there is an invalid tip-sharing arrangement, an employer may not take the tip credit.

51. By requiring Tipped Employees to share tips with non-tipped employees who have no customer interaction, like silverware rollers, Defendant is disqualified from taking a tip credit.

52. Defendant did not provide all the required information to its Tipped Employees before claiming a tip credit.

53. The FLSA requires an employer who claims a tip credit to provide certain information to its Tipped Employees before taking a tip credit.

54. Defendant's failure to give its Tipped Employees notice of all the required information disqualifies Defendant from claiming a tip credit.

55. Defendant requires its Tipped Employees to spend more than 20% of each shift on non-tip-producing tasks while paid at tipped hourly rate of less than $7.25 per hour, including but not limited to setting up and cleaning their sections; setting up to the to-go order section; folding linens; setting up the expo area and the front counter; filling glass jars with jam by hand; brewing coffee; setting up the coffee station; and setting up the drink station.

56. Defendant requires its Tipped Employees to work for periods of longer than 30 minutes without serving customers while being paid only a tip-credit wage. Tipped Employees arrive at work one hour before the restaurant opens to prepare for opening and are paid only a tip-credit wage. After serving their last customer, Defendant requires its Tipped Employees to work for 1–2 hours on closing side work while being paid only a tip-credit wage.

57. Employers may not take a tip credit for all hours worked at a tip-credit wage when they require employees to spend excessive time on non-tip-producing work.

## COUNT I
## Failure to Pay Minimum Wages by All Defendants
## 29 U.S.C. § 206

58. Jones incorporates by reference all prior allegations in this Complaint.

59. Defendant does not meet all § 203(m)'s requirements for claiming a tip credit, as set forth above.

60. Defendant's violations of the FLSA are and were willful, because Defendant knew or should have known that its timekeeping and pay practices violate the FLSA.

61. Defendant's willful FLSA violations extend the statute of limitations from two years to three years.

62. Defendant has failed to make a good-faith effort to comply with the FLSA regarding payment of minimum wages to Jones and the Potentially Similarly Situated Employees.

63. As a result of Defendant's violations of the FLSA, Jones and the Potentially Similarly Situated Employees suffered and continue to suffer damages, namely failing to receive all the minimum wages earned during their employment.

64. In addition to unpaid wages, Defendant must repay Jones and the Potentially Similarly Situated Employees unlawfully retained tips.

65. In addition to unpaid wages, Defendant owes Jones and the Potentially Similarly Situated Employees liquidated damages in an amount equal to their unpaid minimum wages and unlawfully retained tips.

66. Jones and the Potentially Similarly Situated Employees are entitled to recovery of their attorneys' fees and costs.

**PRAYER FOR RELIEF**

Based on the foregoing, Jones prays for the following relief from this Court:

A. Issuing process against Defendant and requiring it to answer within the period provided by law;

B. Requiring Defendant to provide Jones and her counsel the names, addresses, phone numbers, and email addresses for the Potentially Similarly Situated Employees;

C. Permitting Jones and her counsel to issue notice of this collective action to the Potentially Similarly Situated Employees;

D. Giving the Potentially Similarly Situated Employees the opportunity to join this collective action by filing written consents;

E. Awarding damages to Jones in the amount of her unpaid minimum wages and unlawfully retained tips, plus an equal amount of liquidated damages;

F. Awarding damages to all Potentially Similarly Situated Employees who join this

collective action in the amount of their unpaid minimum wages and unlawfully retained tips, plus an equal amount of liquidated damages;

G. Requiring Defendant to pay all attorneys' fees Jones and the Potentially Similarly Situated Employees incur to bring and to maintain this collective action;

H. Requiring Defendant to pay the costs and expenses of this action;

I. Requiring Defendant to pay any applicable pre-judgment and post-judgment interest; and

J. Granting Jones and the Potentially Similarly Situated Employees such other, further, and general relief to which they may be entitled.

## JURY DEMAND

Jones demands a jury trial.

Dated: February 12, 2024          Respectfully submitted,

/s/ *Melody Fowler-Green*
Melody Fowler-Green (#023266)
/s/ *N. Chase Teeples*
N. Chase Teeples (#032400)
YEZBAK LAW OFFICES PLLC
P.O. Box 159033
Nashville, TN 37215
Tel.: (615) 250-2000
Fax: (615) 250-2020
mel@yezbaklaw.com
teeples@yezbaklaw.com

*Attorneys for Plaintiff*