IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TAYLOR JONES, on behalf of herself and all similarly situated employees, | ) ) ) |
| Plaintiff, | ) ) NO. 3:24-cv-00165 |
| v. | ) ) JUDGE CAMPBELL ) |
| BUTTERMILK RANCH, LLC, | ) MAGISTRATE JUDGE FRENSLEY ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

Pending before the Court is Plaintiff Taylor Jones' Motion for Expedited, Court-Authorized Notice to Potentially Similarly Situated Employees. (Doc. No. 16). Defendant Buttermilk Ranch, LLC filed a response in opposition (Doc. No. 19), to which Plaintiff filed a reply (Doc. No. 21).

For the reasons stated herein, Plaintiff's motion for court-authorized notice is **GRANTED**.

### I. BACKGROUND

**A. Factual Background**

Defendant Buttermilk Ranch, LLC ("BMR") owns and operates The Butter Milk Ranch (the "Restaurant"), a breakfast and lunch restaurant with a small-batch bakery in Nashville, Tennessee. (Doc. No. 10 at ¶ 9). Since July 15, 2022, BMR has paid servers and bartenders (hereinafter "Tipped Employees") as tipped employees at an hourly rate less than minimum wage of $7.25 per hour. (*Id*. at ¶ 38).

Plaintiff worked as a server and barista at the Restaurant from January to August 2023. (Doc. No. 17-6, ¶ 2). She states that the Restaurant is open from 8:00 a.m. to 4:00 p.m., and typically has only one shift per day for servers and bartenders. (*Id*., ¶¶ 3, 4). Servers and bartenders

are required to arrive at 7:00 a.m. to perform pre-shift duties (setting up sections, tables, and the coffee station and bar areas, and rolling silverware), attend a mandatory pre-shift meeting that lasts approximately 5 to 15 minutes, and work 45 to 60 minutes after closing performing closing duties. (*Id.*, ¶¶ 5, 6, 9; *see also,* Opening/Running Sidework by Section, Doc. No. 17-14; Closing Sidework Checklists, Doc. No. 17-15; BMR's Answers to Interrogatories, Doc. No. 17-11, ¶ 17 (stating that Tipped Employees are "allotted 30 minutes at the start of their shift to get their side work done")). Plaintiff also states that BMR requires Tipped Employees to share tips with employees who did not have any customer interaction, including an employee who did not interact with customers and "generally spent her shifts rolling silverware." (*Id.*, ¶ 13). Lastly, Plaintiff states that BMR requires Tipped Employees to have, but does not provide pens, paper, and a server book for taking orders, and that she spent approximately $60 from her own money purchasing these items. (*Id.*, ¶ 11, 12).

### B. The Fair Labor Standards Act

The Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-19, generally requires employers to pay employees a minimum hourly wage. 29 U.S.C. § 206. The FLSA allows an employer to pay an amount less than the minimum wage to employees who receive tips and to make up the difference between that rate and minimum wage with the employees' tips. 29 U.S.C. § 203(m). This is known as the "tip credit." Use of the tip credit is subject to conditions, one of which is that the employer must allow the employee to keep all of their tips except that "the pooling of tips among employees who customarily and regularly receive tips" is permitted. *Id.*; *see also*, 29 C.F.R. § 531.59(b) ("With the exception of tips contributed to a tip pool limited to employees who customarily and regularly receive tips …, section 3(m)(2)(A) also requires employers that take a tip credit to permit employees to retain all tips received by the employee.").

2

Beginning in December 2021, FLSA implementing regulations limited the amount of time tipped employees can spend on directly supporting work – i.e., work performed "in preparation of or to otherwise assist tip-producing work." 29 C.F.R. § 531.56(f); 86 Fed. Reg. 60114 (Oct. 29, 2021). As relevant to Plaintiff's claim, that regulation provided that an employer may not claim a tip credit for directly supporting work that exceeds 30 continuous minutes or 20% "of the hours in the workweek for which an employer has taken a tip credit." *Id*. The regulation was amended to remove subsection (f), effective December 17, 2024. *See* 89 Fed. Reg. 101884-01 (Dec. 17, 2024).[1]

Lastly, when an employer claims a tip credit, its employees are deemed to be earning minimum wage. 29 U.S.C. §§ 203(m)(2) and 203(t). An employer cannot make a deduction from an employee's wages if the deduction reduces the wages below the statutory minimum. *See* 29 C.F.R. § 531.35.

### C. Plaintiff's Claim

In February 2024, Plaintiff initiated this lawsuit by filing a Complaint on behalf of herself and similarly situated current and former employees asserting a single claim that Defendant Buttermilk Ranch, LLC ("BMR") failed to pay minimum wage as required by 29 U.S.C. §§ 203(m) and 206. (Doc. No. 1).

Plaintiff claims BMR's pay practices with regard to Tipped Employees violate the Fair Labor Standards Act ("FLSA") in numerous ways, including: (1) BMR requires Tipped Employees to participate in tip-pooling with employees who do not interact with customers; (2) BMR requires Tipped Employees to perform excessive amounts of non-tip-producing work; and (3) BMR

---

[1] The briefing on this motion concluded prior to the amendment and the parties both discuss the now-removed subsection. For purposes of the current motion, the Court need not decide the applicability of the regulation in this case. It is included only to provide context for Plaintiff's claim. Plaintiff's allegations regarding Defendant's adherence to this specific regulation do not affect the overall analysis on the instant motion for Court-authorized notice.

requires Tipped Employees to spend money on "tools of the trade" such as pens, paper, and server books, without reimbursement.

Plaintiff contends BMR's pay practices applied uniformly to all servers and bartenders. She seeks an order authorizing notice to: "All current and former servers and bartenders who have worked at The Butter Milk Ranch for Buttermilk Ranch, LLC at any time since July 15, 2022, and were paid and hourly wage lower than $7.25 per hour, plus tips, during at least one workweek" ("Potentially Similarly Situated Employees"), and approval of the proposed Notice, SMS Message, and Consent Form. (*See* Doc. Nos. 17-1, 17-2, 17-3). Plaintiff also requests the Court order Defendant to produce a list of Potentially Similarly Situated Employees, their dates of employment and last-known mailing addresses, email address, and phone numbers.

## II. LEGAL STANDARD

The FLSA permits employees alleging a violation of the minimum wage provision to bring suit on their own behalf and that of "other employees similarly situated." 29 U.S.C. § 216(b). However, "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." *Id*. In other words, this provision establishes two requirements for a collective action under the FLSA: (1) the additional plaintiffs must "actually be 'similarly situated'"; and (2) they must "signal in writing their affirmative consent to participate in the action." C*omer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). The statute does not define "similarly situated" or prescribe the process for adding other plaintiffs to a collective action.

The Sixth Circuit has prescribed a two-stage process for identifying potentially similarly situated plaintiffs and determined whether the notified employees who have given notice of their desire to opt in as plaintiffs are, in fact, similarly situated to the named plaintiff and each other. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1010-11 (6th Cir. 2023). Only those

employees who are determined to actually be similarly situated will then become plaintiffs in the case. *Id*.

At the first stage of the process, "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id*. at 1011. This level of proof "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id*. To determine whether member of the collective action are similarly situated courts in the Sixth Circuit consider the "factual and employment settings of the individual[ ] plaintiffs" as well as "the different defenses to which the plaintiffs may be subject on an individual basis."[2] *Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584 (6th Cir. 2009)). "Showing a 'unified policy' of violations is not required. *Id*. Employees may be found to be similarly situated if they "suffer from a single, FLSA-violating policy" or if their "claims [are] unified by common theories of defendants' statutory violation, even if the proofs of these theories are inevitably individualized and distinct." *Id*. (citing *O'Brien*, 575 F.3d at 584-85).

### III.  ANALYSIS

#### A. Similarly Situated

In support of the motion for court-authorized notice, Plaintiff filed declarations from herself and six former co-workers (Doc. Nos. 17-4, 17-5, 17-6, 17-7, 17-8, 17-9, 17-10), BMR's employee manuals (Doc. Nos. 17-12, 17-13), BMR's opening and closing checklists (Doc. Nos.

---

[2]     Prior to its decision in *Clark*, 68 F.4th 1003 (2023), the Sixth Circuit also recognized the relevance of "the degree of fairness and procedural impact of certifying the action as a collective action." *See Monroe v. FTS USA, LLC*, 860 F.3d 389, 397 (6th Cir. 2017) (citing *O'Brien*, 575 F.3d at 584). *Clark*, however, made clear that there is no "certification" – conditional or otherwise. 68 F.4th at 1009.

5

Case 3:24-cv-00165   Document 26   Filed 01/13/25   Page 5 of 8 PageID #: 568

17-14, 17-15), a spreadsheet showing tips per employee per pay-period (Doc. No. 17-16), and BMR's answers to interrogatories (Doc. No. 17-11).

At this stage, Plaintiff must show a strong likelihood that the potential plaintiffs for whom she seeks court-authorized notice are similarly situated to her. Like Plaintiff, the other former employees state that they worked at the Restaurant as servers and some also worked as bartenders or baristas. (*See generally*, Doc. Nos. 17-4, 17-5, 17-6, 17-7, 17-8, 17-9, 17-10). Their declarations echo that of Plaintiff, with changes to indicate dates of employment and amounts spend on "tools of the trade." (*Id*.). Each of the declarations states that the Restaurant typically has a single shift for bartenders and servers, the restaurant opens at 8:00 a.m., bartenders and servers are required to arrive at 7:00 a.m. to perform pre-shift duties and to work 45 to 60 minutes after closing to perform closing duties, BMR requires tip pooling and that some of the recipients of pooled tips did not have any customer interaction, and that BMR requires bartenders to have and does not provide pens, paper, and server books. (*Id*.).

In response, Defendant submitted the affidavit of Alyssa Gangeri, who is a Member, Chef, and General Manager of BMR. (*See* Doc. No. 19-1 at ¶ 2). Gangeri states that BMR does not require tipped employees to spend more than 30 continuous minutes during any pre-shift or post-shift period performing non-tip producing tasks such as setting up and rolling silverware. (*Id*., ¶¶ 3,4). She states that the total times spent on these tasks takes only 15 to 30 cumulative minutes and the tipped employees are permitted to drink coffee, eat breakfast, go to the bathroom, and use their phones during pre-shift and post-shift work. (*Id*. ¶¶ 3, 4). Gangeri also states that the restaurant routinely opens 10-15 minutes before the official opening time. (*Id*., ¶ 7).

Defendant does not dispute that tipped employees are required to participate in tip pooling, but contends that all of the employees who participated in tip pooling "performed duties to directly support tipped activities and performed them in the view of customers." (*Id*., ¶ 8). Defendant also

6

does not dispute that some tipped employees chose to bring their own wine keys, pens, and paper to work, but states that BMR provides these supplies at no cost. (*Id*., ¶ 6). Defendant provided documents showing that it purchased 418 pens from Amazon between November 2022 and March 2024. (*Id*. at Ex. 1).

There does not appear to be any dispute that these potential plaintiffs worked at the same location and were subject to the same work and pay policies. Although Defendant challenges the merits of Plaintiff's claims that its pay practices violate the FLSA, it does not make any argument or identify any evidence that the potential plaintiffs to whom Plaintiff seeks to provide court-authorized notice are not similarly situated to Plaintiff. (*See* Doc. No. 19 at 5-13). Accordingly, the Court finds Plaintiff has shown a strong likelihood that current and former servers and bartenders are similarly situated to her and to each other such that court-authorized notice is appropriate.

### B. Notice and Consent Forms

Plaintiff asks the Court to approve her proposed Notice (Doc. No. 17-1), SMS Notice (Doc. No. 17-2), and Consent Form (Doc. No. 17-3) and to direct Defendant to provide a list containing the names, last-known addresses, last-known phone numbers, last-known email addresses, and dates of employment for current and former servers and bartenders who have worked at BMR at any time since July 15, 2022.

With regard to the proposed notice itself, Defendant objects only to the length of the proposed SMS message. (*See* Doc. No. 19 at 14). Plaintiff's proposed text message is 543 characters. Defendant argues that, because SMS messages are limited to 160 characters, the message will be sent as 4-5 individual messages, which Defendant contends is excessive and overburdensome to its employees. Defendant argues the text message should be shortened so that it can be sent in 1-2 messages. Plaintiff responds that there is no cause to shorten the proposed text

7

messages and notes that the Court has approved messages of similar length in other cases. (*See* Doc. No. 21 at 5, Exs. 1-5).

The Court has reviewed the proposed SMS Message (Doc. No. 17-2) and finds that it is of appropriate length to convey the relevant information. Moreover, the Court is not aware of any complaints from recipients of similar messages related to the length of the message. The Court has also reviewed Plaintiff's proposed Notice and Consent Form. (Doc. Nos. 17-1, 17-3). The Notice form should not make representations about the validity of Plaintiff's claim. Accordingly, Plaintiff shall remove the last phrase on the first page of the notice – "any of which, if proven true, constitutes a violation of the law." Otherwise, the Court finds that the proposed Notice, SMS Message, and Consent Form accurately and fairly convey the necessary information at this stage.

## IV. CONCLUSION

For the reasons stated, Plaintiff's motion for court-authorized notice to potentially similarly situated employees and former employees (Doc. No. 16) is **GRANTED** and Plaintiff's proposed Notice, SMS Message, and Consent Form are **APPROVED** with the change stated above. Within 14 days, Defendant shall provide Plaintiff a list of current and former bartenders and servers who worked for BMR at any time since July 15, 2022, including their names, dates of employment, and last-known addresses, phone numbers, and email addresses.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
CHIEF UNITED STATES DISTRICT JUDGE

8

Case 3:24-cv-00165    Document 26    Filed 01/13/25    Page 8 of 8 PageID #: 571